UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EVANS CONCRETE, LLC;<br>JAMES CLAYTON PEDRICK;<br>GREGORY HALL MELTON;<br>JOHN DAVID MELTON,<br>    a.k.a. DAVID MELTON;<br>TIMOTHY TOMMY STRICKLAND,<br>    a.k.a. BO STRICKLAND;<br><br>                   Defendants. | INDICTMENT NO. CR 420 081<br><br>15 U.S.C. § 1<br>18 U.S.C. § 1001<br>18 U.S.C. § 1621 |

**THE GRAND JURY CHARGES THAT:**

<u>COUNT ONE – SHERMAN ACT CONSPIRACY</u>
(15 U.S.C. § 1)

<u>DESCRIPTION OF THE OFFENSE</u>

1.  The following corporations and individuals are hereby indicted and made defendants on the charge stated below:

EVANS CONCRETE, LLC;
JAMES CLAYTON PEDRICK;
GREGORY HALL MELTON;
JOHN DAVID MELTON, a.k.a. DAVID MELTON; and
TIMOTHY TOMMY STRICKLAND, a.k.a. BO STRICKLAND.

2.  Beginning at least as early as 2010 and continuing until in or about July 2016, the exact dates being unknown to the Grand Jury, in the Southern District of Georgia and elsewhere, the defendants and other co-conspirators, including Company-1, Company-2, Company-3, and Individual-A, entered into and engaged in a combination and conspiracy to suppress and eliminate

competition by fixing prices, rigging bids, and allocating markets for sales of ready-mix concrete. The combination and conspiracy engaged in by the defendants and other co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

3. The combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and other co-conspirators, the substantial terms of which were to fix prices, rig bids, and allocate markets for sales of ready-mix concrete in the Southern District of Georgia and elsewhere.

## BACKGROUND

4. Ready-mix concrete is a product comprised of ingredients including cement, aggregate (sand and gravel), water, and, at times, other additives. Ready-mix concrete is made on demand and, if necessary, delivered to work sites by concrete mixer trucks. Ready-mix concrete is purchased by do-it-yourself and commercial customers, as well as local, state, and federal governments, for use in various construction projects, including but not limited to sidewalks, driveways, bridges, tunnels, and roads. Once blended at a plant and loaded into a truck, ready-mix concrete will solidify and be considered a loss if it is not poured in a timely manner (typically less than an hour). Due to high transportation costs and its perishable nature, concrete firms have restricted geographic marketing areas, which surround their various individual plants.

## DEFENDANTS AND CO-CONSPIRATORS

5. Defendant EVANS CONCRETE, LLC, hereinafter EVANS, was a Georgia limited liability corporation with its headquarters in Claxton, Georgia. During the period covered by this Count, Defendant EVANS was engaged in the manufacture and sale of ready-mix concrete in the Southern District of Georgia.

6. Company-1 was a company engaged in the manufacture and sale of cement and ready-mix concrete in the Southern District of Georgia and elsewhere. Company-2 and Company-3 were companies engaged in the manufacture and sale of ready-mix concrete in the Southern District of Georgia and elsewhere.

7. During the period covered by Count One, Defendant GREGORY HALL MELTON, hereinafter GREG MELTON, was division manager of ready-mix concrete sales for Company-1 in its Pooler, Georgia, office.

8. During the period covered by Count One, Defendant JAMES CLAYTON PEDRICK, hereinafter PEDRICK, was a cement salesman for Company-1, selling cement to ready-mix concrete suppliers in the Southern District of Georgia and elsewhere.

9. During the period covered by Count One, Individual-A was an owner of Company-2.

10. From approximately 2007 and continuing until approximately 2015, Defendant JOHN DAVID MELTON, hereinafter DAVID MELTON, was the general manager for Company-2.

11. During the period covered by Count One, Defendant TIMOTHY TOMMY STRICKLAND, a.k.a. BO STRICKLAND, hereinafter STRICKLAND, was, at different times, owner, president, area manager, plant manager, and salesperson for Defendant EVANS.

12. Various companies and individuals, not made defendants in Count One, including Company-1, Company-2, Company-3, and Individual-A, participated as co-conspirators in the offense charged in Count One and performed acts and made statements in furtherance thereof.

13. Whenever in Count One reference is made to any act, deed, or transaction of any company, such allegation shall be deemed to mean that the company engaged in such act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## MANNER AND MEANS OF THE CONSPIRACY

14. For the purpose of forming and carrying out the charged combination and conspiracy, the defendants and other co-conspirators did those things that they combined and conspired to do, including, among other things:

    A. Used Defendant PEDRICK as a conduit to exchange price-increase letters and other pricing and job-related information among the defendants and other co-conspirators for the purpose of coordinating price increases, rigging bids, and allocating jobs;

    B. Issued price-increase letters to ready-mix concrete customers, which letters reflected the price increases agreed-upon by the defendants and other co-conspirators;

    C. Allocated specific ready-mix concrete jobs, including but not limited to allocation between Company-1 and Defendant EVANS of jobs in the Statesboro, Georgia, area;

    D. Allocated specific ready-mix concrete jobs, including but not limited to allocation between Defendant GREG MELTON of Company-1 and Defendant DAVID MELTON of Company-2 of residential jobs;

    E. Agreed to charge ready-mix concrete customers fuel surcharges and environmental fees;

    F. Submitted quotes and bids to ready-mix concrete customers at collusive and noncompetitive prices;

G. Obtained the economic benefits of the charged conspiracy by receiving and accepting payments for ready-mix concrete sold through contracts and on projects that were affected by the conspiracy alleged in this Count;

H. Pressured other concrete suppliers to participate in the conspiracy alleged in this Count and threatened companies that refused to join; and

I. Concealed the conspiracy and conspiratorial contacts through various means, including by using Defendant PEDRICK as a conduit to exchange price-increase letters and information among the defendants and other co-conspirators.

## **TRADE AND COMMERCE**

15. During the time period covered by Count One, the defendants and other co-conspirators, from their offices in Georgia, bid on projects to be performed at locations outside of Georgia, including South Carolina.

16. During the time period covered by Count One, the defendants and other co-conspirators sold ready-mix concrete from their offices in Georgia to locations outside of Georgia, including South Carolina.

17. During the time period covered by Count One, the defendants and other co-conspirators purchased substantial quantities of ingredients, supplies, and equipment necessary to the production and distribution of ready-mix concrete, which ingredients, equipment, and supplies were shipped into Georgia from points of origin outside of Georgia.

18.  During the time period covered by Count One, the defendants and other co-conspirators sold ready-mix concrete to the United States military and agencies of the United States Government. Defendants and other co-conspirators received payments from the United States, which payments were sent from outside of Georgia to the defendants' offices located within Georgia.

19.  During the time period covered by Count One, the business activities of the defendants and other co-conspirators in connection with ready-mix concrete that is the subject of Count One, were within the flow of, and substantially affected, interstate and foreign trade and commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

## COUNT TWO – FALSE STATEMENTS
(18 U.S.C. § 1001)

20.  The Grand Jury incorporates and re-alleges Paragraphs 8 and 10 of Count One as if fully set forth herein.

21.  On or about February 5, 2018, in Savannah, Georgia, in the Southern District of Georgia, Defendant PEDRICK knowingly and willfully made false statements to federal law enforcement agents, which statements were material to a matter within the jurisdiction of the executive branch of the United States Government. Specifically, in connection with an investigation by the United States Postal Service Office of Inspector General and the Federal Bureau of Investigation, Defendant PEDRICK was interviewed by special agents of the United States Postal Service Office of Inspector General and the Federal Bureau of Investigation. During that interview, Defendant PEDRICK falsely stated:

    A.    He had never heard of collusion or price-fixing in the Savannah market; and

    B.    He had never personally discussed concrete price increases with DAVID MELTON.

22.    The statements were false because, as Defendant PEDRICK then and there knew:

    A.    He had heard of and knew of collusion and price fixing in the Savannah market; and

    B.    He had personally discussed concrete price increases with DAVID MELTON.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1001.

## COUNT THREE – FALSE STATEMENTS
(18 U.S.C. § 1001)

23.    The Grand Jury incorporates and re-alleges Paragraphs 6, 7, 8, and 11 of Count One as if fully set forth herein.

24.    On or about October 8, 2015, in Savannah, Georgia, in the Southern District of Georgia, Defendant STRICKLAND knowingly and willfully made false statements to federal law enforcement agents, which statements were material to a matter within the jurisdiction of the executive branch of the United States Government. Specifically, in connection with an investigation by the Defense Criminal Investigative Service ("DCIS") and the United States Attorney's Office for the Southern District of Georgia, Defendant STRICKLAND was questioned in an oral examination by an assistant United States attorney and a special agent of the DCIS. During that interview, Defendant STRICKLAND falsely stated:

7

    A.    Neither he, nor anyone else, had any communications with Company-1 about the Georgia Southern University biology building job;

    B.    He never discussed with GREG MELTON prices of concrete;

    C.    He never discussed with GREG MELTON specific jobs in Statesboro or on the Georgia Southern University campus;

    D.    He never discussed with GREG MELTON, PEDRICK, or anyone else at Company-1 any of the following projects: The Islands, GSU dining facility, Briggs and Stratton, GSU rec facility, Aspen Heights, McDonald's; and

    E.    PEDRICK never gave STRICKLAND anyone else's price-increase letter before it was sent to customers.

25.    The statements were false because, as Defendant STRICKLAND then and there knew:

    A.    He, and others he was aware of, had communications with Company-1 about the Georgia Southern University biology building job;

    B.    He discussed with GREG MELTON prices of concrete;

    C.    He discussed with GREG MELTON specific jobs in Statesboro and on the Georgia Southern University campus;

    D.    He discussed with Company-1 employees, including GREG MELTON and PEDRICK, projects, including The Islands, GSU dining facility, Briggs and Stratton, GSU rec facility, Aspen Heights, and McDonald's; and

    E.    PEDRICK gave Defendant STRICKLAND other concrete companies' price-increase letters before they were sent to customers.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1001.

## **COUNT FOUR – PERJURY**
(18 U.S.C. § 1621(1))

26. The Grand Jury incorporates and re-alleges Paragraphs 6, 7, 8, and 11 of Count One as if fully set forth herein.

27. On or about October 8, 2015, in Savannah, Georgia, in the Southern District of Georgia, Defendant STRICKLAND, having duly taken an oath before a competent person that he would testify truthfully at an oral proceeding at which the laws of the United States authorize an oath to be administered, did willfully, knowingly, and contrary to his oath testify falsely as to a material matter, in that he gave the following answers at an oral examination authorized under Title 31, United States Code, section 3729 et seq. before a duly appointed False Claims Act investigator:

Q: Did you or anyone else, to your knowledge, have any communications with [Company-1] about that [Georgia Southern University biology building] job, bidding on that job?

A: No, I did not.

* * *

Q: Did you ever discuss prices or talk about upcoming jobs with Greg Melton?

A: Prices of concrete?

Q: Price of concrete.

A: No, no.

* * *

Q: Have you and Greg Melton ever discussed prices of concrete to the customers? Have you ever talked to Greg Melton about his prices or [Company-1's] prices for concrete?

A: Have I talked to Greg about their pricing?

9

Q: Yes.

A: No.

Q: What about any specific jobs in Statesboro or on the Georgia Southern University campus? Have you ever talked to him about any projects there?

A: No.

* * *

Q: What about the upcoming, the next heading down there, "Upcoming projects: The Islands, GSU dining facility, Briggs and Stratton, GSU rec facility, Aspen Heights, McDonald's." Did you talk to Greg Melton or Jim Pedrick or anyone else at [Company-1] about those projects?

A: No.

* * *

Q: Has Jim Pedrick ever given you anyone else's price-increase letter before they were sent out[?]

A: No.

28. The aforesaid testimony of Defendant STRICKLAND, as he then and there well knew and believed, was false in that:

    A. He, and others he was aware of, had communications with Company-1 about the Georgia Southern University biology building job;

    B. He discussed with GREG MELTON prices of concrete;

    C. He discussed with GREG MELTON specific jobs in Statesboro and on the Georgia Southern University campus;

10

D.	He discussed with Company-1 employees, including GREG MELTON and PEDRICK, upcoming projects, including The Islands, GSU dining facility, Briggs and Stratton, GSU rec facility, Aspen Heights, and McDonald's; and

E.	PEDRICK gave Defendant STRICKLAND other concrete companies' price-increase letters before they were sent to customers.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1621(1).

A True Bill.

_[signature]_

MAKAN DELRAHIM
Assistant Attorney General

RICHARD A. POWERS
Deputy Assistant Attorney General

MARVIN N. PRICE JR.
Director of Criminal Enforcement

Antitrust Division
U.S. Department of Justice

_[signature]_

JAMES J. FREDRICKS
Chief, Washington Criminal II Section
Antitrust Division
U.S. Department of Justice

_[signature]_

MATTHEW STEGMAN*
PATRICK S. BROWN*
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal II Section
450 5th Street NW
Washington, DC 20530
Tel: (202) 598-8381
matthew.stegman@usdoj.gov
patrick.brown2@usdoj.gov
*Co-lead Counsel

_[signature]_

BOBBY L. CHRISTINE
United States Attorney for the
SOUTHERN DISTRICT OF GEORGIA

_[signature]_

E. GREG GILLULY, JR.
Assistant United States Attorney
Deputy Chief, Criminal Division
SOUTHERN DISTRICT OF GEORGIA